UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with **D.N.J. LBR 9004-1(b)**

CULLEN AND DYKMAN LLP
Kyriaki Christodoulou
One Battery Park Plaza, 34th Floor
New York, New York 10004
(212) 701-4170
kchristodoulou@cullenllp.com

-and-

Matthew G. Roseman, Esq. (admission *pro hac vice* forthcoming)
Thomas R. Slome, Esq. (admission *pro hac vice* forthcoming)
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
mroseman@cullenllp.com
tslome@cullenllp.com

*Attorneys for TriState Capital Bank*

| | |
|---|---|
| In re:<br><br>    DAMIS Holdings LLC, *et al.*[1],<br><br>    Debtors. | Chapter 11<br><br>Case No. 26-16439 (CMG)<br><br>Hon. Christine M. Gravelle |

### MOTION FOR ENTRY OF AN ORDER PROHIBITING THE USE OF CASH COLLATERAL AND FOR AN ACCOUNTING OF CASH COLLATERAL USED

TO THE HONORABLE CHRISTINE M. GRAVELLE, UNITED STATES BANKRUPTCY JUDGE:

---

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/. The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

36041043

TriState Capital Bank ("TriState"), by and through its counsel Cullen and Dykman LLP, as and for its motion ("Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, prohibiting 830 County Road 64 Real Estate LLC (Case No. 26-16527) ("Real Estate Debtor") and 830 County Road 64 Leasing LLC (Case No. 26-16526-CMG) ("Leasing Debtor" and, with the Real Estate Debtor, the "830 County Road Debtors") two of the jointly administered, above-captioned debtors (the "Debtors") from using TriState's cash collateral ("Cash Collateral") and compelling the Debtor to account for its use, respectfully represents as follows:

## INTRODUCTION

1.      On June 4, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court").  In addition to the Debtor, Leasing Debtor and 88 other affiliates of the Debtor, including DAMIS Holdings LLC ("DAMIS Debtor"), filed chapter 11 petitions on the Petition Date (collectively, the "DAMIS Debtors"). On June 11, 2026, the DAMIS Debtors filed a motion for joint administration (the "Joint Administration Motion") [Dkt. No. 21], and the parties appeared for hearing on the Joint Administration Motion on June 12, 2026. While the order granting the Joint Administration Motion has not yet been entered, the Hon. Eamonn J. O'Hagan granted the motion at the hearing and an order is expected to be entered shortly. The DAMIS Debtors have engaged Kroll Restructuring Administration LLC ("Kroll") to set up a website for what appears will be a consolidated docket for those cases and to act as a claims agent for the DAMIS Debtors.[2]

2.      Also on the Petition Date, 61 additional affiliates of the DAMIS Debtors (the "SIMAD Debtors" and, with the DAMIS Debtors, the "Debtors") filed chapter 11 petitions, and

---

[2] Kroll is also the claims agent for the SIMAD Debtors (defined below) and has set up a separate website for them.

those cases have been ordered procedurally consolidated under the chapter 11 case of SIMAD Holdings Ltd., Case No. 26-16388 (CMG) [Dkt. No. 15].

3.      TriState understands that all the Debtors are owned, operated, and/or controlled by two brothers:  Michael Shabsels and David Shabsels (the "Shabsels Brothers"), who have also filed their own respective chapter 11 cases in this Court.

4.      The business of the SIMAD Debtors appears to relate to owning and operating summer camps, while the business of the DAMIS Debtors appears to relate to owning and operating other types of real estate, including owning and operating shopping centers like the 830 County Road Debtors are doing and which is the subject of this Motion.

5.      The 830 County Road Debtors, as ground lessees, operate the Big Flats Shopping Center located at 831, 830, 821 and 845 County Road 64, Big Flats, New York (the "Shopping Center") under a 99-year ground lease ("Ground Lease") they acquired in September 2024 from the fee owner and ground lessor, Elmira Real Estate Enterprises LLC.  As further described below, the Ground Lease and the leasehold estate created thereby (the "Leasehold Estate") is collateral for TriState's loan to the 830 County Road Debtors, along with a collateral assignment of the Shopping Center's leases and rents (collectively, "Rents").

6.      No trustee or examiner has been appointed in any of the Debtors' cases, and all Debtors remain in possession of their property and in operation of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

8.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

11.     On September 27, 2024, the 830 County Road Debtors, as borrowers, executed a Credit Agreement (the "Credit Agreement") with TriState as Administrative Agent together with TriState and Wayne Bank as a lenders (collectively, "Lenders"), in connection with a loan from them in the aggregate amount of $28 million (the "Loan"), under which TriState lent $23 million and Wayne Bank lent $5 million.  Under the Credit Agreement, TriState serves as Administrative Agent and has authority to file this Motion on behalf of the Lenders.

12.     The Loan obligations were governed by numerous documents executed on or about September 27, 2024 (the "Loan Documents") including two Mortgage Notes, one payable to Tristate in the original principal amount of $23 million and another payable to Wayne Bank in the original principal amount of $5 million (the "Mortgage Notes").  The Mortgage Notes and the indebtedness governed by the Loan Documents are secured by, among other things, (a) a Leasehold Mortgage, Security Agreement and Fixture Filing ("Mortgage"), granting TriState as Administrative Agent for the Lenders a lien and security interest on the Leasehold Estate in favor of the 830 County Road Debtors, and (b) an Assignment of Leases and Rents ("ALR") of the leases for the space tenants of the Shopping Center and the rents payable thereunder.

13.     The Loan is also unconditionally guaranteed by the Shabsels Brothers pursuant to a Guaranty Agreement.

14.     The Loan Documents require the 830 County Road Debtors to repay the Loan on or before October 1, 2029, with monthly payments of interest and principal pursuant to a 20-year amortization schedule. The 830 County Road Debtors were current on their payment obligations

4

until they failed to make the payment required to be made on June 1, 2026, which to date has not been paid.

15. The Mortgage was recorded with the Chemung County Clerk's Office on October 16, 2024, as Instrument Number 202413275 and the ALR was recorded with the Chemung County Clerk's Office on October 16, 2024, as Instrument Number 202413276. TriState as Administrative Agent also filed a county level UCC financing statement with the Chemung County Clerk's Office on October 16, 2024 (filing number 20240068) and a secretary of state level UCC financing statement with the New York Secretary of State on October 4, 2024 (filing number 202410040373101) (the "UCCs").

16. Pursuant to the recorded Mortgage, ALR and UCCs, TriState as Administrative Agent for the Lenders has a perfected and first priority lien against the Leasehold Estate and the Rents. The Rents constitute "Cash Collateral" within the meaning of section 363(a) of the Bankruptcy Code.

17. As of the Petition Date, TriState was owed $26,777,860 for principal and $143,552.65 for interest, which interest continues to accrue at the default rate under the Loan Documents. TriState is also owed legal fees and disbursements it is incurring in connection with these bankruptcy proceedings and other charges, including a possible swap termination fee that may become owing if TriState terminates that swap.

18. On June 10, 2026, TriState's undersigned counsel sent a letter via email to counsel for the 830 County Road Debtors demanding that they cease and desist from spending any Cash Collateral and immediately account for all Cash Collateral used. Debtors' counsel acknowledged receipt of that letter.

19.     One week into this large chapter 11 multi-debtor filing, the 830 County Road Debtors have yet to even request this Court's approval of the use of Cash Collateral or TriState's consent (which TriState has not given). While TriState is open to negotiating an acceptable cash collateral stipulation and budget for the 830 County Road Debtors, with appropriate adequate protection of its interest in the Leasehold Estate and the Rents, the current status quo is completely unacceptable and contrary to basic and explicit requirements of the Bankruptcy Code.

20.     Accordingly, at this time and for the reasons explained below, TriState requests that the Court immediately enter an order prohibiting the 830 County Road Debtors from using any of the Cash Collateral and requiring them to account for any Cash Collateral used by them on and after the Petition Date.  This way, TriState and the Lenders can more fully be protected from any improper use of its Cash Collateral.

## LEGAL ARGUMENT

### A. The Debtors Should Be Ordered to Stop Using Cash Collateral

21.     First, as this Court knows, the Bankruptcy Code prohibits the use of cash collateral without a lender's consent or a court order. Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor "may not use, sell, or lease cash collateral under [section 363] unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." *See* 11 U.S.C. § 363(c)(2); *In re GVM, Inc.*, 605 BR 315, 324 (Bankr. M.D. Pa 2019) ("a debtor may not use cash collateral unless consent is obtained from creditors that have an interest in the collateral, or the bankruptcy court authorizes its use.").

22.     "The debtor's complete respect for secured property rights is commanded by the Bankruptcy Code.  Section 363(c) requires either creditor consent or prior court approval to use cash collateral, and in the well-managed chapter 11 case the 'motion to use cash collateral' is the very first pleading to be filed by the highly-leveraged debtor." *In re Alvey*, 56 B.R. 170, 172-73 (Bankr. W.D. Ky. 1985).

23.     Second, TriState has not consented to the use of its Cash Collateral.  Indeed, the 830 County Road Debtors did not even reach out to TriState to discuss same, and TriState's counsel had to affirmatively reach out to counsel for the 830 County Road Debtors.  First, he contacted the counsel who filed the Debtors' cases.  Counsel first contacted Debtors' counsel who filed all the Debtors' cases, only to be told that the DIMAS Debtors would be represented by new counsel who was retained nearly a week post-petition in a very complex case.  Counsel then contacted Michael Pompeo, Esq., incoming proposed Debtors' counsel.  Subsequently, Mr. Pompeo and a representative of the Debtor's proposed financial advisor, B. Riley, had a phone conference with TriState and its counsel.  Understandably, Mr. Pompeo is still familiarizing himself with the breadth and scope of the DAMIS Debtors' cases and was unable to address concerns regarding use of Cash Collateral by the 830 County Road Debtors or anything specific about them or their cases.

24.     Thus, while discussions have just now been initiated about Cash Collateral and TriState's demand that the Debtors cease and desist from using any of it without appropriate protections, it will be at least another week before such discussions can make progress due to the apparent workload of new counsel and the CRO for the DIMAS Debtors, all while the many red flags discussed below (including millions of dollars of suspicious transfers) exist in this case, such that the Court should not rely only upon the Bankruptcy Code's prohibition on use of cash

7

collateral and the good faith of these Debtors to comply with their duties as debtors in possession.

25.     Third, the Debtors did not contact TriState to discuss use of Cash Collateral before filing these cases, contrary to the norm as observed by the *Alvey* court where a well-managed debtor files a motion to use cash collateral on day one (or better yet, files the case with a pre-negotiated cash collateral stipulation and budget).  It is unclear as to what expenditures the Debtors are making or required to make; however, it *is* clear that whatever the Debtor may be paying for its operations, Cash Collateral is being used without TriState's consent. Accordingly, the Court should expressly and specifically prohibit the 830 County Road Debtors' use of Cash Collateral in violation of Section 363(c)(2) of the Bankruptcy Code.

26.     Fourth, all the DAMIS Debtors' cases are now a week old, and they have not made required or prudent first-day filings in addition to any motions to use cash collateral or have a stipulation for such use approved.  Such motions would include, among others, motions seeking joint administration, to utilize existing bank accounts, to pay certain critical expenses, to address utilities and to make payroll.  They have also not submitted a mailing list, master service list and applied to designate these cases as chapter 11 complex cases as required by the Local Rules. In the 830 County Road Debtors' cases in particular, one would think that many expenditures must be made on an ongoing and regular basis to maintain proper operations of such a large shopping center.

27.     In addition, construction is ongoing on several tenant buildouts at the Shopping Center and any delay in paying contractors and completing buildouts for tenants may damage the estate and TriState's collateral.

28. Fifth, the SIMAD Debtors, in their emergency motion for use of cash collateral and other relief [Dkt. No. 7], describe how they owe over $200 million in Israeli bonds, have defaulted in their payment obligations thereunder, and have pledged certain collateral to secure the bond debt, and that the trustees for the bondholders have asserted liens in cash. It is important to the integrity of all these cases that each Debtor's cash be segregated and monitored closely. This is particularly true in light of media reports of the Shabsels Brothers being accused of fraud in connection with the Israeli bonds (see https://therealdeal.com/new-york/2026/06/05/mohawk-day-camp-owner-files-for-bankruptcy/?utm_medium=social&utm_campaign=single_content_share&utm_source=share) and the suspicious and substantial transfers out of the 830 County Road Debtors' accounts described in the next paragraph. As noted above, the Shabsels Brothers are in control of the 830 Country Road Debtors.

29. Sixth, the 830 County Road Debtors' accounts at TriState show questionable wire transfers out of such accounts since the beginning of the year to the DAMIS Debtor, including one for $421,000 made just three days before the Petition Date.

30. Finally, TriState has reason to believe that the fee owner of the Shopping Center and ground lessor to the 830 County Road Debtors, is not at arms-length with the 830 County Road Debtors or their principals, the Shabsels Brothers, raising many questions regarding the underlying transaction and why the fee owner did not also file a related chapter 11 petition. The Ground Lease was executed by Mark Graham, as president of Leeton Real Estate, Inc., which is the manager of Elmira Real Estate Enterprises LLC (*i.e.,* the ground lease landlord). A publicly available prospectus filed by Citigroup Commercial Mortgage Securities Inc. with the SEC describes a long-existent business relationship between Mr. Graham and the Shabsels Brothers

9

and that they are involved in many ground lease transactions.  See Form FWP Benchmark 2026-B43 Mortg Filed by: CITIGROUP COMMERCIAL MORTGAGE SECURITIES INC at page 83.  In addition to being long-standing business partners, TriState is advised that Mr. Graham (an attorney) has provided legal representation to the Shabsels Brothers.

31.     If the principals of the Debtors are close business partners with the principal of the ground lessor, it raises issues that could affect these estates, such as whether the rent paid on the Ground Lease will be appropriately used to pay the fee mortgagee on the Shopping Center.

32.     All these questions and concerns call for entry of an order prohibiting Cash Collateral and for an accounting thereof—relief which is clearly consistent with the Bankruptcy Code. Section 105(a) permits the Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).  In these circumstances, TriState submits that the order requested is both necessary and appropriate.

**B.  The Debtors Should Be Ordered To Provide An Accounting**

33.     The Debtors should also be compelled to immediately provide an accounting of all monies expended since the Petition Date.  As such funds constitute Cash Collateral, TriState, as well as the Court and the United States Trustee, have the right to such information.

**CONCLUSION**

34.     Based on the foregoing, TriState respectfully submits that grounds exist to prohibit the Debtors' use of Cash Collateral and to compel the Debtors to immediately account for all monies disbursed by them since the Petition Date.

35.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, TriState respectfully requests that the Court grant the relief sought

herein, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 12, 2026

CULLEN AND DYKMAN LLP


By:      *s/Kyriaki Christodoulou*
Kyriaki Christodoulou, Esq.
Kyriaki Christodoulou
One Battery Park Plaza, 34th Floor
New York, New York 10004
(212) 701-4170
kchristodoulou@cullenllp.com
-and-
Matthew G. Roseman, Esq. (admission *pro hac vice* forthcoming)
Thomas R. Slome, Esq. (admission *pro hac vice* forthcoming)
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
mroseman@cullenllp.com
tslome@cullenllp.com

*Counsel to TriState Capital Bank*