UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

FAEGRE DRINKER BIDDLE & REATH LLP
Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Patrick A. Jackson (*pro hac vice* pending)
Ian J. Bambrick (*pro hac vice* pending)
222 Delaware Ave. Suite 1410
Wilmington, DE  19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
patrick.jackson@faegredrinker.com
ian.bambrick@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and
Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| DAMIS Holdings LLC, *et al.*,[1] | Case No. 26-16439 (CMG) |
| Debtors. | (Joint Administration Requested) |

**DAMIS DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN INTERIM
ORDER (I) AUTHORIZING THE DAMIS DEBTORS' IMMEDIATE USE OF
CASH COLLATERAL AND EXISTING BANK ACCOUNTS FOR PURPOSES OF
SATISFYING PREPETITION GROSS SALARIES, PAYROLL TAXES, AND
OTHER CRITICAL EXPENSES, (II) AUTHORIZING THE DAMIS DEBTORS
TO SATISFY AND DIRECT PAYROLL BANKS TO HONOR CERTAIN
PREPETITION GROSS SALARIES AND PAYROLL TAXES OF THEIR
EMPLOYEES, (III) AUTHORIZING THE DAMIS DEBTORS' CONTINUED
USE OF THEIR CASH MANAGEMENT SYSTEM, HONOR CERTAIN**

---

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/.  The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

1

**PREPETITION OBLIGATIONS RELATED THERETO, AND CONTINUE
ADDITIONAL TRANSACTIONS, (IV) AUTHORIZING THE DEBTORS TO PAY
CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND
<u>SERVICE PROVIDERS AND (V) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE CHRISTINE M. GRAVELLE
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

The debtors and debtors in possession, (collectively, the "<u>DAMIS Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"), by and through their proposed undersigned counsel, respectfully state as follows in support of this motion (the "<u>Motion</u>"):

<u>**Relief Requested**</u>

1.      Through this Motion, the DAMIS Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "<u>Emergency Interim Order</u>"): (a) authorizing the DAMIS Debtors' immediate use of cash collateral and its existing bank accounts (the "<u>Bank Accounts</u>") for purposes of satisfying prepetition and post-petition gross salaries, payroll taxes and other emergent expenses in an amount not to exceed $700,000; (b) authorizing the DAMIS Debtors to direct their payroll banks to honor certain prepetition and post-petition gross salaries, payroll taxes and other related expenses of their employees and supplemental workforce; and (c) authorizing, but not directing, the DAMIS Debtors to (i) continue using their cash management system, (ii) honor certain prepetition obligations related thereto, and (iii) continue additional transactions and funding consistent with the DAMIS Debtors' historical practices funded through bank account(s) under the control of the DAMIS Debtors' independent Chief Restructuring Officer, Perry Mandarino (the "<u>CRO</u>"); (d) authorizing the DAMIS Debtors to pay certain prepetition and post-petition claims of critical vendors; and (e) granting related relief. The DAMIS Debtors are imminently seeking the relief requested herein on an interim basis.

2.      The DAMIS Debtors, lease and operate various multifamily properties, offices, hotels, resorts, and retail spaces throughout the United States.  Recognizing the significant liabilities that faced the DAMIS Debtors leading up to these Chapter 11 Cases, the DAMIS Debtors appointed the CRO, who now has full operational control over the DAMIS Debtors and their businesses. As described below, the DAMIS Debtors sought relief through these filings to invoke the automatic stay and stave off the potential exercise of remedies by merchant cash advance and short-term funders and lenders, potentially depriving the DAMIS Debtors of access to their remaining cash.

3.      The DAMIS Debtors need to access cash collateral to pay critical employee and related expenses and continue using their bank accounts.  Such relief is essential so that the numerous resorts and other properties operated by the DAMIS Debtors can continue to remain open and operate without interruption.

4.      Accordingly, the DAMIS Debtors seek on an emergency basis the limited relief set forth herein.  The DAMIS Debtors intend to return to this Court for more comprehensive relief in the coming days.

### Jurisdiction and Venue

5.      The United States Bankruptcy Court for the District of New Jersey (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.). The DAMIS Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested herein are sections 105(a), 363, 503, 507, and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 9013-1, and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

### Background

#### A. The DAMIS Debtors' Business [2]

8.      The DAMIS Debtors, lease and operate various multifamily properties, offices, hotels, resorts, and retail space throughout the United States.  The DAMIS Debtors range from property holding companies to full-scale resort operating entities.  For this reason, the DAMIS Debtors employ a number of individuals in various capacities from property-management and office staff, to guest services, housekeeping, culinary and other necessary services to maintain operations.

9.      Certain of the DAMIS Debtors that are operating entities employ a property management company that in turn employs the individuals to run the day-to-day operations.  In such situations, payroll and other necessary expenses for the operation of these entities are funded by the DAMIS Debtor but paid through the property management company.  While the individuals employed by the property management companies are not direct employees of record of the DAMIS Debtors, they are essential supplemental workforce in the nature of contracted employees.  Thus, the livelihood of these individuals, and the operations of these entities is entirely dependent on the property management company's receipt of funds from the relevant DAMIS Debtor.

---

[2] Some of the information in this section was obtained by publicly available information concerning the DAMIS Debtors.

10.     The DAMIS Debtors' main source of income is derived from rental income generated by leasing their real properties primarily ground rent and base rent followed by resort and lodging revenue (including summer camp and seasonal programming) and, to a lesser extent, ancillary income such as facility rentals, parking, and food-and-beverage operations.

11.     Each DAMIS Debtor maintains and operates its own bank account for operating expenses.  The CRO is in the process of assessing the finances maintained in each of the Bank Accounts and familiarizing himself with the DAMIS Debtors' operational expenses.

**B. The Bankruptcy Filings**

12.     On June 4, 2026 (the "Petition Date"), each of the DAMIS Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The DAMIS Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and no official committees have been appointed or designated.

13.     On June 11, 2026, the DAMIS Debtors filed a motion [D.I. 22] (the "Stony Creek Motion") requesting certain emergency relief relating to the use of cash and payment of certain employee and operational obligations by Debtor Stony Creek Operating Co, LLC ("Stony Creek") and Debtor DAMIS Holdings, LLC.  On June 12, 2026, the Court held an emergency hearing and thereafter entered an order [D.I. 40] granting the relief requested in the Stony Creek Motion.

14.     Upon information and belief in the days leading up to the Petition Date, certain of the DAMIS Debtors were in default on payments owed to merchant cash advance and short-term funders (the "MCA Funders").  In an effort to mitigate the risk that MCA Funders would sweep

the DAMIS Debtors' cash, among others, in the past few weeks, the DAMIS Debtors appointed the CRO and filed these Chapter 11 Cases to invoke the automatic stay and allow the CRO to help guide the process through the chapter 11 proceedings.

## Basis for Relief Requested

15.    By this Motion, the DAMIS Debtors seek emergent authority on an interim basis to use their cash, including amounts that may constitute cash collateral, to satisfy prepetition and post-petition gross salaries, payroll taxes and other emergent expenses and vendor claims and to direct their banks to honor those payments.  Additionally, the DAMIS Debtors seek an interim order authorizing, but not directing, them to (i) continue using their cash management system, including the Bank Accounts, (ii) honor certain prepetition and post-petition obligations related thereto, and (iii) continue additional transactions and funding consistent with the DAMIS Debtors' historical practices funded through the DAMIS Debtors' accounts under the control of the CRO.

16.    To the extent the DAMIS Debtors' cash as of the Petition Date is cash collateral, each of the DAMIS Debtors, as chapter 11 debtors-in-possession have the statutory right to use cash collateral to operate their businesses.[3]  Section 363(c)(2) of the Bankruptcy Code governs a debtor's use of cash collateral. That section provides:

> The trustee [or debtor-in-possession] may not use, sell or lease cash collateral under paragraph 1 of this subsection, unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provision of this section.

11 U.S.C. § 363(c)(2).

---

[3] The DAMIS Debtors and their professionals are examining whether any of the cash in their bank accounts as of the Petition Date was subject to a valid lien and security interest.  Subject to further review and investigation, the DAMIS Debtors are not aware that any lender has a perfected lien or security interest in the DAMIS Debtors' cash as of the Petition Date.

17.     Further, bankruptcy courts regularly treat requests for authority to continue using existing cash management systems, including the Bank Accounts, as a relatively "simple matter." *In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  To avoid a material disruption to their business operations and to minimize administrative expense to their estates, the DAMIS Debtors request authority, on an emergency basis, and subject to further application and order of the Court, to continue using the Bank Accounts consistent with historical practices in the ordinary course of business.  Requiring the DAMIS Debtors at this crucial period to change their accounts and deposits and payment procedures abruptly would result in harm to the DAMIS Debtors, their estates, and their creditors because it would leave the DAMIS Debtors without access to their cash as they navigate the continuation of operations amidst the filing of these Chapter 11 Cases.

18.     Moreover, as it relates to the payment of prepetition wages and vendor claims, courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

19.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ,* 273 B.R. at 497.

20.     The DAMIS Debtors' emergency use of their cash, including their cash collateral, and the Bank Accounts, is crucial to avoid interruption of the DAMIS Debtors' operations caused by lack of funds. Unless the DAMIS Debtors are authorized to use their cash, including cash collateral, and the Bank Accounts, the DAMIS Debtors will be unable at this critical juncture to satisfy prepetition and post-petition gross salaries, payroll taxes and other emergent and related vendor claims and expenses, which are critical to keeping their operating properties open and continuing business operations. The DAMIS Debtors submit that application of the "necessity of

8

payment" doctrine here establishes that the DAMIS Debtors should be authorized to honor payroll. If the DAMIS Debtors are not authorized to fulfill their payroll obligations, the DAMIS Debtors' relationship with its employees and supplemental workforce will be adversely affected and the employees' morale, dedication, confidence and cooperation might be irreparably compromised. The support of the staff at the various operating properties for the DAMIS Debtors' reorganization efforts is critical and cannot be jeopardized. Equally important, absent the entry of this Emergency Interim Order granting the relief requested in the Motion, the employees and supplemental workforce may suffer significant financial hardship and likely choose to terminate their relationships with the DAMIS Debtors.

21. The DAMIS Debtors further submit that parties in interest will not be harmed by their maintenance of their current cash management system and access to the cash in the Bank Accounts to meet their obligations immediately coming due and needed to keep the DAMIS Debtors' businesses open and operational. Pending a further hearing, the CRO intends to only pay amounts from these bank accounts needed to ensure the businesses remain open and operational to allow the DAMIS Debtors to maintain ordinary course operations.

**Request of Waiver of Stay**

22. To the extent that the relief sought in this Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the DAMIS Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the DAMIS Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the DAMIS Debtors to be able to continue to operate their business and preserve the value of their estates.

9

**Reservation of Rights**

23.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the DAMIS Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the DAMIS Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the DAMIS Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the DAMIS Debtors' estates; (g) a waiver or limitation of the DAMIS Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the DAMIS Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k)  otherwise affecting the DAMIS Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought

herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the DAMIS Debtors' rights to subsequently dispute such claim.

### No Prior Request

24. No prior request for the relief sought herein has been made to this or any other court.

### Notice

25. The DAMIS Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the District of New Jersey; (b) the MCA Funders (via email); (c) all of the DAMIS Debtors' known banking institutions; (d) the DAMIS Debtors' payroll processors; (e) any parties with known secured interests in the Debtors' assets, and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. The DAMIS Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the DAMIS Debtors request that the Court enter the Emergency Interim Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

11

Dated:  June 15, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Michael P. Pompeo*

Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Patrick A. Jackson (*pro hac vice* pending)
Ian J. Bambrick (*pro hac vice* pending)
222 Delaware Ave. Suite 1410
Wilmington, DE  19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
patrick.jackson@faegredrinker.com
ian.bambrick@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and
Debtors in Possession*