| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| Caption in Compliance with D.N.J. LBR 9004-1(b) |
| **FAEGRE DRINKER BIDDLE & REATH LLP**<br>Michael P. Pompeo<br>600 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>(973) 549-7000 (Telephone)<br>(973) 360-9831 (Facsimile)<br>michael.pompeo@faegredrinker.com<br><br>-and-<br><br>Ian J. Bambrick (*pro hac vice*)<br>Patrick A. Jackson (*pro hac vice*)<br>Sarah E. Silveira (*pro hac vice* pending)<br>222 Delaware Ave. Suite 1410<br>Wilmington, DE  19801<br>(302) 467-4200 (Telephone)<br>(302) 467-4201 (Facsimile)<br>ian.bambrick@faegredrinker.com<br>patrick.jackson@faegredrinker.com<br>sarah.silveira@faegredrinker.com<br><br>*Proposed Counsel to the DAMIS Debtors and*<br>*Debtors in Possession* |

| | |
|---|---|
| In re: | Chapter 11 |
| DAMIS Holdings LLC, *et al.*,[1] | Case No. 26-16439 (CMG) |
| Debtors. | (Jointly Administered) |

**DAMIS DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) GRANTING AUTHORITY TO (A) CONTINUE USING THE CASH MANAGEMENT SYSTEM, BUSINESS FORMS, AND BOOKS AND RECORDS AND PAY ALL FEES RELATED THERETO, (B) IMPLEMENT ORDINARY-COURSE CHANGES TO CASH MANAGEMENT SYSTEM, INCLUDING OPENING AND CLOSING ACCOUNTS, (C) CONTINUE INTERCOMPANY TRANSACTIONS; (II) GRANTING**

---

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/.  The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS; AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTINE M. GRAVELLE
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

DAMIS Holdings LLC ("DAMIS Holdings") and certain of its affiliates (collectively, the "DAMIS Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order," and together with the Proposed Interim Order, the "Proposed Orders"), (i) authorizing the DAMIS Debtors to (a) continue using their existing bank accounts, the cash management system, business forms, and books and records and continue paying all fees related thereto, and (b) implement ordinary-course changes to the cash management system, including opening and closing accounts as deemed necessary and appropriate in the DAMIS Debtors' business judgment; (ii) authorizing the DAMIS Debtors to continue performing intercompany transactions in the ordinary course of business and consistent with prepetition practice and granting administrative expense status to postpetition intercompany transactions; and (iii) granting related relief.  In support of this Motion, the DAMIS Debtors rely upon and incorporate by reference the *Declaration of Perry Mandarino, Chief Restructuring Officer of the DAMIS Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]  In further support of this Motion, the DAMIS Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

---

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day Declaration.

2

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) (the "Standing Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[3]  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory and legal predicates for the relief sought herein are sections 105(a), 345, 363, 364, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rules 2015, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

3.  On June 4, 2026 (the "Petition Date"), each of the DAMIS Debtors filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The DAMIS Debtors are authorized to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

4.  As set forth in the First Day Declaration, the DAMIS Debtors own, lease, and operate various multifamily properties, offices, hotels, and retail spaces throughout the United States.  Additional information regarding the DAMIS Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

---

[3]  The DAMIS Debtors consent to the Court's entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter a final order consistent with Article III of the United States Constitution.

DMS_US.377973324.6

**BACKGROUND RELATING TO THE MOTION**

5.      In the ordinary course of business, the DAMIS Debtors use a system of bank accounts to collect, transfer, and disburse funds generated by their operations (the "Cash Management System"). The Cash Management System is critical to the efficient execution and achievement of the DAMIS Debtors' business objectives and, ultimately, to maximizing the value of the DAMIS Debtors' estate.

**A.      Bank Accounts and Flow of Funds**

6.      The DAMIS Debtors maintain a Cash Management System that consists of the bank accounts identified in the schedule attached hereto as **Exhibit C** (the "Bank Accounts"). The banks and financial institutions at which the Bank Accounts are held are herein referred to as the "Banks."

7.      As of the Petition Date, the Cash Management System is comprised of ninety-five (95) DAMIS-Debtor-owned and controlled Bank Accounts maintained with multiple Banks, and the DAMIS Debtors hold approximately $10 million cash on hand in the Bank Accounts. Effective as of the Petition Date, the DAMIS Debtors' managing members, David Shabsels and Michael Shabsels, ceded control over the DAMIS Debtors to the DAMIS CRO and the independent managers, Bernard A. Katz and Jill Frizzley. To effectuate control, the DAMIS CRO is in the process of having the signatories on the Bank Accounts changed but has, as of the filing of this Motion, been unable to obtain the requisite signatures from David Shabsels and Michael Shabsels. The DAMIS CRO continues to work with the DAMIS Debtors' advisors to assess the finances maintained in each of the bank accounts and familiarize himself with the DAMIS Debtors' operational and other expenses.

8.      With the exception of the intercompany transfers between DAMIS Holdings and the remaining DAMIS Debtors (as detailed below), the flow of funds is generally contained

4

DMS_US.377973324.6

between the LandCo Debtor and OpCo Debtor, if applicable, or contained to just the individual DAMIS Debtor entity with funds (*e.g.*, rent) flowing in and operating expenses flowing out. An illustrative schematic of the Cash Management System is attached hereto as **Exhibit D**.

**B.     Service Charges**

9.     The DAMIS Debtors incur periodic service charges and other fees in connection with the Bank Accounts and the maintenance of the Cash Management System in accordance with the agreements between the Banks and the DAMIS Debtors that existed prior to the Petition Date governing the DAMIS Debtors' banking relationships (collectively, the "Bank Contracts," and such fees, collectively, the "Bank Fees"). The DAMIS Debtors pay the Bank Fees monthly, and the Banks debit these fees from the Bank Accounts. Each DAMIS Debtor entity pays only the fees associated with its own Bank Account(s), and no DAMIS Debtor entity is responsible for or pays the fees relating to the accounts of another DAMIS Debtor entity outside of DAMIS Holdings, when necessary, as detailed below. The DAMIS Debtors pay approximately $10,000.00 per month in Bank Fees.

**C.     The DAMIS Debtors' Intercompany Transactions**

10.    In the ordinary course of business, DAMIS Holdings will, when necessary, provide funding to other DAMIS Debtor entities (the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Balances").

11.    In connection with the daily operation of the Cash Management System, as business is transacted between DAMIS Holdings and the DAMIS Debtor entities, at any given time there may be Intercompany Balances owing. The Intercompany Transactions are reflected as journal entry receivables and payables, as applicable, and the DAMIS Debtors track all fund transfers

DMS_US.377973324.6

through their accounting system and can ascertain, trace, and account for all Intercompany Transactions.

12.     The DAMIS Debtors rely on the Intercompany Transactions to make payments necessary for the continued operations of the DAMIS Debtors' businesses, and they anticipate that postpetition Intercompany Transactions will continue at prepetition levels.

13.     The DAMIS Debtors would be unduly burdened both financially and logistically if they were required to halt Intercompany Transactions or otherwise make material changes to the Intercompany Transactions system.  If the Intercompany Transactions were to be discontinued, the Cash Management System and the DAMIS Debtors' operations would be disrupted unnecessarily to the detriment of the DAMIS Debtors, their estates, and their creditors.  The DAMIS Debtors seek the authority to continue the Intercompany Transactions in the ordinary course of business consistent with past practice.

**D.     Business Forms and Books and Records**

14.     As part of the Cash Management System, the DAMIS Debtors use a variety of preprinted business forms (including checks, letterhead, correspondence forms, invoices, and other business forms) in the ordinary course of business (collectively, the "Business Forms").  The DAMIS Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records").

15.     To avoid a significant disruption to their business operations and to minimize administrative expense to their estates, the DAMIS Debtors request authorization to continue using all of the Business Forms and the Books and Records in a manner consistent with prepetition practice, without reference to the DAMIS Debtors' status as chapter 11 debtors in possession,

6

rather than requiring the DAMIS Debtors to incur the expense and delay of ordering new Business forms and creating new Books and Records.

**E.      Compliance With the U.S. Trustee Guidelines and the Bankruptcy Code**

16.      The U.S. Trustee's Operating Guidelines for Chapter 11 Cases (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account at a depository institution on a pre-approved list (any such institution, an "Authorized Depository") issued by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee").

17.      Section 345 of the Bankruptcy Code also imposes certain requirements on the DAMIS Debtors with respect to bank deposits unless the Court "for cause" orders otherwise. 11 U.S.C. § 345(a)–(b).  Specifically, if a debtor's funds are deposited into any account that is not insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, section 345(b) of the Bankruptcy Code requires, unless the court orders otherwise, the financial institution at which a debtor's account is maintained to post a surety bond or pledge securities to secure the estate's interest in the deposited funds or to deposit securities of the kind specified in 31 U.S.C. § 9303. 11 U.S.C. § 345(b).

18.      Of the thirty-three (33) Banks where the DAMIS Debtors hold Bank Accounts, seven (7) Banks—Bank of America, Bank of New Hampshire, Columbia Bank, First-Citizens Bank & Trust Company, S&T Bank, TD Bank, and TriState Capital Bank—are designated as Authorized Depositories.  The remaining Banks are not Authorized Depositories (the "Non-Authorized Banks").

7

19. Absent relief from section 345(b) of the Bankruptcy Code, the DAMIS Debtors would be required to close the Non-Authorized Banks, open new bank accounts at an Authorized Depository, and transfer all funds held in the Non-Authorized Banks to the newly opened bank accounts. Complying with such a requirement would be highly disruptive to the DAMIS Debtors' business in the critical early days of these Chapter 11 Cases.

20. For the aforementioned reasons, the DAMIS Debtors respectfully submit that cause exists to allow them to continue using the existing Banks. The DAMIS Debtors will work in good faith with the U.S. Trustee to resolve any concerns regarding their continued use of the Bank Accounts in the Non-Authorized Banks.

## RELIEF REQUESTED

21. By this Motion, the DAMIS Debtors request that the Court enter the Proposed Orders, (i) authorizing the DAMIS Debtors to (a) continue using their existing Bank Accounts, the Cash Management System, Business Forms, and Books and Records and paying all fees related thereto, and (b) implement ordinary-course changes to the Cash Management System, including opening and closing Bank Accounts as deemed necessary and appropriate in the DAMIS Debtors' business judgment; (ii) authorizing the DAMIS Debtors to continue performing Intercompany Transactions in the ordinary course of business and consistent with prepetition practice and granting administrative expense status to postpetition Intercompany Transactions; and (iii) granting related relief.

22. The DAMIS Debtors further request that the Court authorize and direct the Banks to (i) continue to maintain, service, and administer the Bank Accounts and (ii) debit the Bank Accounts in the ordinary course of business on account of (a) wire transfers or draws on the Bank Accounts, provided that any payments drawn, issued, or made prior to the Petition Date shall not be honored absent direction of the DAMIS Debtors and a separate order of the Court authorizing

8

such prepetition payment, or (b) undisputed service charges and other fees owed to the Banks for maintenance of the Cash Management System, if any.

23. The Proposed Orders (i) authorize and direct financial institutions to receive, process, honor, and pay electronic payment requests relating to the foregoing to the extent the DAMIS Debtors have sufficient funds standing to their credit with such Bank, whether such requests were submitted before or after the Petition Date, and (ii) provide that all such financial institutions are authorized to rely on the DAMIS Debtors' designation of any particular electronic payment request as appropriate pursuant to this Motion or any other Order of this Court without any duty of further inquiry and without liability for following the DAMIS Debtors' instructions.

**BASIS FOR RELIEF**

**A.     The DAMIS Debtors' Uninterrupted Use of the Existing Cash Management System and Bank Accounts Is Warranted**

24. The DAMIS Debtors seek authority to continue utilizing their current Cash Management System, as described above. The Cash Management System provides significant benefits to the DAMIS Debtors, including the ability to: (i) closely track, and thus control, all corporate funds; (ii) ensure cash availability; and (iii) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. Indeed, it is critical that the DAMIS Debtors are able to consolidate management of cash and centrally coordinate transfers of such funds to efficiently and effectively operate their business, including by providing the Banks with the comfort of authority and direction from the Court, as provided for in the Proposed Orders, to replace David Shabsels and Michael Shabsels as signatories on the Bank Accounts and explicitly provide such authority to the DAMIS CRO.

DMS_US.377973324.6

25. In particular, because the DAMIS Debtors process significant amounts of cash on a regular (at times, daily) basis, any disruption to the Cash Management System would seriously harm the DAMIS Debtors. Maintenance of the existing Cash Management System will prevent any unexpected or inopportune interruption to the DAMIS Debtors' business operations while protecting the DAMIS Debtors' cash for the benefit of their estates. Furthermore, the Chapter 11 Cases will be facilitated by preserving the "business as usual" atmosphere and avoiding the distractions that would inevitably be associated with a substantial disruption in the Cash Management System. Requiring the DAMIS Debtors to change the Cash Management System at this critical time would cause unnecessary disruption to the DAMIS Debtors and their business affairs.

26. The Cash Management System utilizes the Bank Accounts to effectively and efficiently collect, transfer, and disburse funds as needed in the DAMIS Debtors' general business operations. The DAMIS Debtors can proceed through the chapter 11 process in an efficient and cost-effective manner only if the Bank Accounts are continued in their current form. The DAMIS Debtors will also maintain records of postpetition transfers within the Cash Management System, so that transfers and transactions will be documented in their books and records to the same extent such information was maintained by the DAMIS Debtors prior to the Petition Date.

27. Accordingly, the DAMIS Debtors respectfully request that the Court authorize the continued use of the Cash Management System, provided that no prepetition drafts, wire transfers, or other forms of tender that have not yet cleared the relevant drawee Bank as of the Petition Date will be honored unless authorized by separate order of this Court.

28. The DAMIS Debtors also request that no Bank that honors a prepetition draw on any account that is the subject of this Motion, (i) at the direction of the DAMIS Debtors; (ii) in a

good-faith belief that the Court has authorized such draw to be honored; or (iii) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures, be deemed to be liable to the DAMIS Debtors or to their estates on account of such prepetition draw being honored postpetition.  Such flexibility is necessary to induce the Banks to continue providing cash management services without additional credit exposure.

29.    Additionally, in the ordinary course of operating their business, it may be necessary for the DAMIS Debtors to make changes to the Cash Management System, including opening new accounts or closing existing accounts.  The DAMIS Debtors intend to continue to maintain strict accounting records, including with respect to receipts and disbursements, and any changes to the Cash Management System or Accounts, so that the U.S. Trustee and parties-in-interest may readily monitor the DAMIS Debtors' financial activities.

30.    Maintenance of the existing Cash Management System and Accounts is in the best interest of the DAMIS Debtors and their estates.  However, the U.S. Trustee has issued the U.S. Trustee Guidelines, which require a chapter 11 debtor to, among other things:

(a)    close all existing, prepetition bank accounts;

(b)    open new bank accounts that are designated as debtor-in-possession accounts ("DIP Accounts"), with separate DIP Accounts established for a tax account (to the extent that payroll or other taxes are an issue for the debtor) and a separate DIP Account for cash collateral in accordance with section 363(c)(4) of the Bankruptcy Code;

(c)    deposit all estate funds into DIP Accounts that are maintained with financial institutions whose deposits are insured by the Federal Deposit Insurance Corporation (FDIC);

(d)    deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll.

31.    Given the nature of the DAMIS Debtors' business, such requirements would cause enormous disruption to the DAMIS Debtors' business and would impair the DAMIS Debtors'

DMS_US.377973324.6

chapter 11 efforts.  The Bank Accounts are part of an established Cash Management System that the DAMIS Debtors need to maintain, in particular given the entity-level transactions of individual DAMIS Debtors, to ensure smooth collections and disbursements in the ordinary course of their business.  Therefore, to avoid delays in paying debts incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the DAMIS Debtors should be permitted to continue to maintain the Bank Accounts and, if necessary, open new accounts and close existing accounts in the ordinary course of business.  Otherwise, transferring the Bank Accounts will be disruptive, time-consuming, and expensive.

32.    The Court has the authority to excuse a debtor from strict compliance with the U.S. Trustee Guidelines pursuant to its equitable powers under section 105(a) of the Bankruptcy Code.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The relief requested herein is both necessary and appropriate to allow the DAMIS Debtors to successfully administer the Chapter 11 Cases, to optimize their postpetition business performance, and to maximize the value of their estates.

33.    Indeed, it is well settled in this Circuit that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part on other grounds*, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit has emphazied that requiring the maintenance of all accounts separately "would be a huge administrative burden and economically inefficient."  *In re Columbia Gas Sys, Inc.*, 997 F.2d at 1061; *accord In re Southmark Corp.*, 49 F.3d 1111, 1114

DMS_US.377973324.6

(5th Cir. 1995) (explaining that a cash management system allows a debtor "to administer more efficiently and effectively its financial operation and assets").

34. Accordingly, bankruptcy courts routinely grant debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *accord Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

35. The DAMIS Debtors will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them prior to the Petition Date, other than those authorized by the Court.

36. In light of the foregoing, the DAMIS Debtors submit that the relief requested herein with respect to the maintenance of the existing Cash Management System and Accounts is necessary, prudent, and in the best interests of their estates and creditors.

**B.      Permitting the DAMIS Debtors to Satisfy Prepetition Banks Fees Is Justified**

37. The DAMIS Debtors, operating their business as debtors in possession under section 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors." *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty to "protect and preserve the estate, including an operating business's going-concern value." *Id*.

38. The *CoServ* court specifically noted that pre-plan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*. at 498. The court provided a three-pronged test for determining whether a pre-plan payment on account of a prepetition claim was a valid

13

exercise of a debtor's fiduciary duty: *First*, it must be critical that the debtor deal with the claimant. *Second*, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. *Third*, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* at 498.

39.     Satisfying the Bank Fees, including prepetition obligations on account thereof, meets each element of the *CoServ* court's standard. The Bank Accounts are part of an established Cash Management System that the DAMIS Debtors need to maintain to ensure smooth collections and disbursements in the ordinary course of their business, and payment of the Bank Fees is a prerequisite to keeping the Bank Accounts open. The DAMIS Debtors, therefore, can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by having the authority, but not the direction, of the Court to satisfy outstanding prepetition obligations on account of the Bank Fees.

40.     The Court may also authorize the payment of the Bank Fees pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition claims where the debtors "articulate some business justification, other than the mere appeasement of major creditors"); *In re James A. Phillips, Inc.*, 29 B.R. 391, 395-97 (S.D.N.Y. 1983) (authorizing payment of prepetition claims of some suppliers

DMS_US.377973324.6

who were potential lien claimants because the payments were necessary for the general contractors to release funds owed to the debtors).

41.     Additionally, as highlighted above, section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  Under section 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that the necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus"); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's reorganization).

42.     In light of the DAMIS Debtors' chapter 11 strategy and the efforts to maximize value for the benefit of all creditors, the relief requested herein is necessary and appropriate.  The success of the DAMIS Debtors' chapter 11 efforts is dependent upon, among other things, the ability to maintain the Bank Accounts and current Cash Management System.  The ability to pay the Bank Fees, including related prepetition amounts, is critical to the DAMIS Debtors' successful prosecution of the Chapter 11 Cases, as any inability on the DAMIS Debtors' part to continue to satisfy prepetition obligations with respect to the Bank Fees would threaten the DAMIS Debtors'

15

ability to maximize estate value.  Accordingly, the relief requested herein is warranted and a sound exercise of business judgment.

**C.     The Court Should Authorize the DAMIS Debtors to Continue Engaging in Postpetition Intercompany Transactions and Grant Administrative Expense Status to Postpetition Intercompany Balances**

43.     The Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  However, out of an abundance of caution, the DAMIS Debtors are seeking express authority to engage in such transactions, in the ordinary course of business, on a postpetition basis. The DAMIS Debtors will continue to maintain records of all postpetition Intercompany Transactions, including records of all current intercompany accounts receivables and payables, to facilitate parties' access to such information if reasonably requested.

44.     The relief requested herein fairly balances the DAMIS Debtors' needs to facilitate the ordinary course operation of their business and effectuate their operational restructuring, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders and transparency, on the other hand.  The Intercompany Transactions are essential components of the DAMIS Debtors' operations and the postpetition Intercompany Transactions will result in efficiencies and cost savings to the DAMIS Debtors, maximizing the value of the DAMIS Debtors' estates.  Any interruption of the Intercompany Transactions—including failure to advance or reimburse payments related to the DAMIS Debtors' businesses and operational restructuring— would severely disrupt the DAMIS Debtors' operations and result in significant harm to the DAMIS Debtors' estates.  The DAMIS Debtors' inability to enter into and perform Intercompany Transactions in the ordinary course would result in certain entities lacking sufficient funds to pay obligations, including to employees and vendors that are providing critical services and goods that directly benefit the DAMIS Debtors' estates.  Any material interruption in the provision of these

16

critical services and goods—however brief—would disrupt the DAMIS Debtors' operations and could cause irreparable harm to the DAMIS Debtors' go-forward businesses, goodwill, employees, customer base, market share, and would severely impair the DAMIS Debtors' restructuring efforts. Simply put, the DAMIS Debtors cannot operate normally without the Intercompany Transactions.

45.     Further, because the Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that directly benefit the DAMIS Debtors and their ongoing operations, the DAMIS Debtors request that any postpetition Intercompany Transactions be granted administrative expense status under sections 503(b) and 364(b) of the Bankruptcy Code.  Under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate. . . ."  11 U.S.C. § 503(b)(1)(A).  Section 364(b) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(b).  Granting administrative expense status will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to such Debtors' respective creditors (subject and junior to any claims, including adequate protection and cash collateral claims).

**D.     The DAMIS Debtors Should Be Granted Authority to Use Existing Business Forms**

46.     The DAMIS Debtors request that they be authorized to continue to use their Business Forms and Books and Records, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  Parties doing business

DMS_US.377973324.6

with the DAMIS Debtors will be aware of their status as debtors in possession and changing forms such as letterhead would be an unnecessary additional expense and unduly burdensome.

47.     The DAMIS Debtors should be permitted to maintain their existing Books and Records rather than open a new set as required under the U.S. Trustee Guidelines.  The DAMIS Debtors use a sophisticated recordkeeping system that enables them to consolidate their Books and Records for financial reporting purposes while maintaining separate records on an entity-by-entity basis to track the operations and results of individual entities across their corporate structure. Continued use of the DAMIS Debtors' current Books and Records, therefore, will maximize efficiency and decrease administrative burden while maintaining the precise entity-by-entity reporting contemplated by the U.S. Trustee.

48.     For the reasons set forth above, the DAMIS Debtors submit that the foregoing requested relief is necessary, prudent, and in the best interests of the DAMIS Debtors, their estates, and any party in interest.

**F.      The Court Should Waive the Section 345(b) Deposit Guidelines, to the Extent Necessary**

49.     The DAMIS Debtors request that the Court waive the requirements of section 345(b) of the Bankruptcy Code as to the Bank Accounts in the Non-Authorized Banks and permit the DAMIS Debtors to maintain the deposits in such accounts in accordance with their existing deposit practices.

50.     Section 345 of the Bankruptcy Code governs a debtor's deposits during a chapter 11 case.  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the

18

DMS_US.377973324.6

undertaking of a corporate security, "unless the court for cause orders otherwise."  11 U.S.C. § 345(b).

51.     In evaluating whether cause exists, courts have considered a number of factors, including the following:

1.      The sophistication of the debtor's business;
2.      The size of the debtor's business operations;
3.      The amount of investments involved;
4.      The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held;
5.      The complexity of the case;
6.      The safeguards in place within the debtor's own business of insuring the safety of the funds;
7.      The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
8.      The benefit to the debtor;
9.      The harm, if any, to the estate; and
10.     The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

52.     Cause exists to waive the requirements under section 345(b) of the Bankruptcy Code.  Absent relief from section 345(b) of the Bankruptcy Code, the DAMIS Debtors would be required to close the Non-Authorized Banks, open new bank accounts at an Authorized Depository, and transfer all funds held in the Non-Authorized Banks to the newly opened bank accounts.  Given the number of DAMIS Debtors and the fact that each maintains its own Bank Account, complying with such a requirement would be highly disruptive to the DAMIS Debtors' business in the critical early days of these Chapter 11 Cases and would preclude key individuals from addressing emergency issues (*e.g.*, fulfilling payroll obligations, addressing critical vendor issues, etc.).

53.     The DAMIS Debtors should be authorized to continue utilizing their existing Bank Accounts, including those with the Non-Authorized Banks, in the ordinary course of business.

19

DMS_US.377973324.6

Although not an Authorized Depository, the Non-Authorized Banks are well-capitalized, financially stable and widely recognized as reputable banking institutions.  The DAMIS Debtors will also work in good faith with the U.S. Trustee to resolve any concerns regarding their continued use of the Bank Accounts in the Non-Authorized Banks.

54.     For these reasons, cause exists for the Court to grant the DAMIS Debtors a waiver of the requirements set forth in section 345(b) of the Bankruptcy Code pursuant to the Proposed Orders.  Granting such relief will allow the DAMIS Debtors to continue utilizing the existing Bank Accounts and will inure to the benefit of all stakeholders.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

55.     The DAMIS Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business from their anticipated access to cash collateral.  Under the Cash Management System, the DAMIS Debtors can readily identify checks and wire transfer requests as relating to an authorized payment.  With the protections afforded by the Proposed Orders, there is minimal risk that checks or wire transfer requests that the Court has not authorized will be honored inadvertently.  The DAMIS Debtors request that the Court authorize and direct all applicable financial institutions, when requested by the DAMIS Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003(a)

56.     Pursuant to Bankruptcy Rule 6003(a), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires that the DAMIS Debtors demonstrate that such relief "is needed to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(a). As set forth

DMS_US.377973324.6

throughout this Motion, the Cash Management System is critical to the DAMIS Debtors' ongoing operations.  Disruption to the Cash Management System will cause delays, impede the DAMIS Debtors' ability to efficiently track the flow of funds, and would substantially diminish or impair the DAMIS Debtors' efforts in the Chapter 11 Cases to preserve and maximize the value of their estates.

57.     For this reason and those set forth above, to the extent Bankruptcy Rule 6003(a) is applicable given the timing of the requested hearing on this Motion, the DAMIS Debtors respectfully submit that Bankruptcy Rule 6003(a) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the DAMIS Debtors and their estates.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

58.     Pursuant to Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any disruption in the current Cash Management System would be detrimental to the DAMIS Debtors, their estates, and their creditors, and would impair the DAMIS Debtors' ability to optimize their business performance at this critical time as they begin the chapter 11 process.

59.     For this reason and those set forth above, the DAMIS Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent applicable to the Proposed Orders.

**NOTICE**

60.     The DAMIS Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Office of the United States Attorney for the District of New Jersey; (iii) the Internal Revenue Service; (iv) the DAMIS Debtors' thirty (30) largest unsecured creditors (excluding insiders); (v) the Securities and Exchange Commission;

21

(vi) the Banks; and (vii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  The DAMIS Debtors will serve notice of this Motion and any order entered hereon in accordance with Rule 9013-5 of the Local Rules.  In light of the nature of the relief requested herein, the DAMIS Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the DAMIS Debtors respectfully request entry of the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated: Florham Park, New Jersey
        June 24, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Michael P. Pompeo*
Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Ian J. Bambrick (*pro hac vice*)
Patrick A. Jackson (*pro hac vice*)
Sarah E. Silveira (*pro hac vice* pending)
222 Delaware Ave. Suite 1410
Wilmington, DE  19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
ian.bambrick@faegredrinker.com
patrick.jackson@faegredrinker.com
sarah.silveira@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and Debtors in Possession*

22

DMS_US.377973324.6