| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **FAEGRE DRINKER BIDDLE & REATH LLP**<br>Michael P. Pompeo<br>600 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>(973) 549-7000 (Telephone)<br>(973) 360-9831 (Facsimile)<br>michael.pompeo@faegredrinker.com<br><br>-and-<br><br>Ian J. Bambrick (*pro hac vice*)<br>Patrick A. Jackson (*pro hac vice*)<br>Sarah E. Silveira (*pro hac vice* pending)<br>222 Delaware Ave. Suite 1410<br>Wilmington, DE 19801<br>(302) 467-4200 (Telephone)<br>(302) 467-4201 (Facsimile)<br>ian.bambrick@faegredrinker.com<br>patrick.jackson@faegredrinker.com<br>sarah.silveira@faegredrinker.com<br><br>*Proposed Counsel to the DAMIS Debtors and*<br>*Debtors in Possession* | |
| In re:<br><br>DAMIS Holdings LLC, *et al.*,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 26-16439 (CMG)<br><br>(Jointly Administered) |

**DAMIS DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DAMIS DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND SERVICE PROVIDERS; (II) AUTHORIZING**

---

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/. The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

DMS_US.378027271.5

**THE BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER
REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTINE M. GRAVELLE
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

DAMIS Holdings LLC and certain of its affiliates (collectively, the "DAMIS Debtors"),
the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11
Cases"), hereby file this motion (this "Motion") for the entry of interim and final orders,
substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and
**Exhibit B** (the "Proposed Final Order," and together with the Proposed Interim Order, the
"Proposed Orders"), (i) authorizing, but not directing, the DAMIS Debtors to pay, in the ordinary
course of business, certain prepetition claim amounts of critical vendors and service providers (the
"Critical Vendors" whose claims shall be collectively identified herein as "Critical Vendor
Claims"), subject to the conditions described herein; (ii) authorizing banks and other financial
institutions (collectively, the "Banks") to honor and process checks and electronic transfer requests
related to the foregoing; and (iii) granting related relief.  In support of the Motion, the DAMIS
Debtors rely upon and incorporate by reference the *Declaration of Perry Mandarino, Chief
Restructuring Officer of the DAMIS Debtors, in Support of the Chapter 11 Petitions and First Day
Motions* (the "First Day Declaration").[2] In further support of this Motion, the DAMIS Debtors
respectfully state as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6,

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day
Declaration.

2

2025 (Bumb, C.J.) (the "Standing Order").  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and the Court may enter a final order consistent with Article III of the United States

Constitution.[3]  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105(a),

363(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

**GENERAL BACKGROUND**

3.      On June 4, 2026 (the "Petition Date"), each of the DAMIS Debtors filed with the

Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The DAMIS

Debtors are authorized to operate their businesses and manage their properties as debtors and

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request

has been made for the appointment of a trustee or an examiner.  The Chapter 11 Cases are being

jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

4.      As set forth in the First Day Declaration, the DAMIS Debtors own, lease and

operate various multifamily properties, offices, hotels and retail spaces throughout the United

States.  Additional information regarding the DAMIS Debtors' businesses, capital structure, and

the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day

Declaration.

---

[3]     The DAMIS Debtors consent to the Court's entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter a final order consistent with Article III of the United States Constitution.

DMS_US.378027271.5

**BACKGROUND RELATING TO THE MOTION**

5.      The DAMIS Debtors, lease and operate various multifamily properties, offices, hotels, resorts, and retail space throughout the United States.  The DAMIS Debtors range from property holding companies to full-scale resort operating entities.  For this reason, certain of the DAMIS Debtors depend on a number of Critical Vendors to sustain ongoing operations and, for certain DAMIS Debtors, continue to serve their guests.  Such Critical Vendors supply the DAMIS Debtors with goods, materials, and services, including food, supplies, maintenance, staffing, and logistics.  The DAMIS Debtors need to be able to assure their guests, as well as the Critical Vendors and the DAMIS Debtors' employees, that notwithstanding the filing of the Chapter 11 Cases, the DAMIS Debtors will be able to maintain business operations and timely provide guests with the same quality of service they have come to expect. Without a consistent and full supply of products and services, the DAMIS Debtors not only risk damaging their reputation and guest relations, which would be difficult to restore and potentially jeopardize the DAMIS Debtors' ability to sustain ongoing operations and continue to operate as a going concern.  Accordingly, the DAMIS Debtors have determined, in an exercise of their business judgment, that their continued receipt of certain goods and services is necessary to preserve and maximize the value of the DAMIS Debtors' estates.

**A.      Critical Vendors**

6.      To identify the Critical Vendors, the DAMIS Debtors and their advisors spent significant time and effort reviewing and analyzing the DAMIS Debtors' books and records, consulting operations management, and analyzing historical practices to identify business relationships which, if lost, could materially harm the DAMIS Debtors' business, significantly reduce the DAMIS Debtors' enterprise value, and/or negatively affect their strategy in the Chapter 11 Cases.  In this process, the DAMIS Debtors and their advisors considered a variety of factors,

4

DMS_US.378027271.5

including (i) whether a vendor is a sole- or limited-source supplier of certain goods, materials, or other services for use in the DAMIS Debtors' business; (ii) whether, if a vendor is not a sole- or limited-source supplier, the DAMIS Debtors have sufficient product in inventory to continue their operations while a replacement vendor is put in place; (iii) whether certain quality specifications or other regulations prevent the DAMIS Debtors from obtaining a vendor's products or services from alternative sources within a reasonable timeframe; (iv) the degree of risk that a vendor would move to a direct relationship with the DAMIS Debtors' customers; and (v) whether a vendor meeting the foregoing criteria is able or likely to refuse to supply goods, materials, or other services to the DAMIS Debtors post-petition if its prepetition balances are not paid.

7.      Based on these criteria, the DAMIS Debtors identified Critical Vendors that provide goods and services which are essential to the continuing operation of the DAMIS Debtors' businesses, including (i) maintenance & facilities services, (ii) property management & professional services; (iii) grounds, cleaning, and janitorial services; and (iv) safety, security, and compliance ; and (v) providers of other critical business support and maintenance services.

8.      As of the Petition Date, the DAMIS Debtors estimate that the Critical Vendor Claims total approximately $1,250,000 which will come due in the interim period.

## RELIEF REQUESTED

9.      By this Motion, the DAMIS Debtors request that the Court enter the Proposed Orders, (i) authorizing the DAMIS Debtors to pay, in their discretion, the Critical Vendor Claims in an amount not to exceed $1,250,000 in the interim period; (ii) authorizing the Banks to honor and process checks and electronic transfer requests related to the foregoing; and (iii) granting related relief.

10.     The DAMIS Debtors propose conditioning, where possible, the payment of Critical Vendor Claims on obtaining an agreement from each Vendor to continue supplying goods and

5

DMS_US.378027271.5

services to the DAMIS Debtors on as favorable trade terms, practices, and programs as those trade terms, practices, and programs in place in the two years before the Petition Date (the "Customary Trade Terms") or pursuant to such other trade practices and programs that are favorable to the DAMIS Debtors.

## BASIS FOR RELIEF

**A.     The Court Should Authorize, But Not Direct, the DAMIS Debtors, in Their Discretion, to Pay the Critical Vendor Claims**

11.     The goods and services provided by the Vendors are necessary to ensure that there are no unexpected or inopportune interruptions to the DAMIS Debtors' operations. The Vendors are the most cost-efficient and, in many cases, the only source from which the DAMIS Debtors can procure critical goods and services within a timeframe that would permit the DAMIS Debtors to avoid unanticipated interruptions, delays, or shutdowns in their operations. Any failure to pay the Critical Vendor Claims would, in the DAMIS Debtors' business judgment, result in the Vendors refusing to provide necessary goods and services to the DAMIS Debtors. Any unexpected or inopportune interruption, delay, or shutdown in the DAMIS Debtors' operations resulting from a refusal by the Vendors to do business with the DAMIS Debtors on a post-petition basis would have significant deleterious effects on the DAMIS Debtors' business and service of guests and would undermine the DAMIS Debtors' ability to preserve and maximize the value of their estates.

12.     With respect to the Critical Vendor Claims, the DAMIS Debtors have reviewed their accounts payable and undertaken a process to identify those vendors that are essential to avoid any unexpected or inopportune interruptions to their operations. The authority to pay the Critical Vendor Claims is vital to the DAMIS Debtors' efforts to preserve and maximize the value of their estates. If the Proposed Orders are not entered, many of the Vendors will likely refuse to do business with the DAMIS Debtors. Such a result would be damaging to the DAMIS Debtors'

6

DMS_US.378027271.5

efforts to successfully prosecute the Chapter 11 Cases to the detriment of the DAMIS Debtors' estates and creditors.  Further, the DAMIS Debtors' ability to condition payment on the Vendors' compliance with Customary Trade Terms will enable the DAMIS Debtors to maximize the value of their business.

13.     For the reasons set forth above, the DAMIS Debtors submit that entry of the Proposed Orders is necessary, prudent, and in the best interests of the DAMIS Debtors, their estates, and any party in interest.

**B.     The Court Should Authorize Payment of the Critical Vendor Claims Under the "Doctrine of Necessity"**

14.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).

15.     Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the post-petition payment of prepetition claims where such payment is necessary to preserve the value of a debtor's estate.  *See, e.g.*, *Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M. D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a pre-petition obligation[s] when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1

7

(3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

16.     In a long line of well-established cases, federal courts consistently have permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & S. W.R. Co.*, 106 U.S. 286, 312 (1882) (holding that payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending the doctrine for payment of prepetition claims beyond railroad reorganization cases).

17.     This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's [continued operation]."); *In re Columbia Gas Sys.*, Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing

8

the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to a debtor's continued operation). The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims. In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

18.     As explained above, the goods and services provided by the Vendors are essential to ensure that there is no unexpected or inopportune interruption to the operation of the DAMIS Debtors' businesses. The DAMIS Debtors submit that the total amount to be paid to the Vendors is minimal compared to the importance and necessity of the DAMIS Debtors' uninterrupted receipt of the necessary goods and services. Moreover, the DAMIS Debtors' analysis indicates that there are no cost-effective or readily accessible alternatives to paying the Vendors.

19.     Accordingly, the DAMIS Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

**C.     The Court Should Authorize Payment of the Critical Vendor Claims as a Valid Exercise of the DAMIS Debtors' Fiduciary Duties**

*20.*     Authority for satisfying the Critical Vendor Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The DAMIS Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the

9

duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

21. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that pre-plan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product." *Id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

22. Payment of the Critical Vendor Claims meets each element of the *CoServ* court's standard. As described above, the Critical Vendor Claims encompass the claims of the Vendors that would otherwise refuse, or would be unable to, provide goods and services to the DAMIS Debtors on a post-petition basis if their prepetition balances are not paid, thereby creating the significant risk that the DAMIS Debtors will experience an unexpected or inopportune interruption to their operations. Any such interruption would diminish estate value and frustrate the DAMIS Debtors' chapter 11 efforts. The harm and economic disadvantage that would stem from the failure of any of the Vendors to perform are disproportionate to the amount of the Critical Vendor Claims.

23. Finally, the DAMIS Debtors have examined other options short of payment of the Critical Vendor Claims and have determined that, to avoid an unexpected or inopportune

interruption to their business operations, there exists no practical alternative to their payment of the Critical Vendor Claims. Therefore, the DAMIS Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Critical Vendor Claims.

**D.    The Court Should Authorize the Banks to Honor and Process the DAMIS Debtors' Payments in Accordance with the Motion**

24.    The DAMIS Debtors also request that the Court authorize the Banks, when requested by the DAMIS Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the DAMIS Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The DAMIS Debtors further request that all of the Banks be authorized to rely on the DAMIS Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

25.    Accordingly, for all of the foregoing reasons, the DAMIS Debtors submit that cause exists for granting the relief requested herein. For the reasons set forth above, the DAMIS Debtors submit that the payment of the Critical Vendor Claims is necessary, prudent, and in the best interests of the DAMIS Debtors, their estates, and any party in interest.

**SATISFACTION OF BANKRUPTCY RULE 6003(a)**

26.    Pursuant to Bankruptcy Rule 6003(a), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires that the DAMIS Debtors demonstrate that such relief "is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). As set forth throughout this Motion, the success of the Chapter 11 Cases depends upon the continued receipt

11

of critical goods and services.  Without such goods and services, the DAMIS Debtors' estates would suffer immediate and detrimental consequences to the DAMIS Debtors' business, which would jeopardize the DAMIS Debtors' efforts to preserve and maximize the value of their estates, to the detriment and prejudice of all of the DAMIS Debtors' stakeholders.  Moreover, it is the DAMIS Debtors' business judgment that continuation of their positive relationships with the Vendors is critical to avoid any unexpected or inopportune interruption to their operations and increase the likelihood of successfully prosecuting the Chapter 11 Cases.  Thus, if the relief requested herein is not granted, the DAMIS Debtors' failure to satisfy the Critical Vendor Claims would cause the DAMIS Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the DAMIS Debtors' chapter 11 efforts.

27.    For this reason and those set forth above, to the extent Bankruptcy Rule 6003(a) is applicable given the timing of the requested hearing on this Motion, the DAMIS Debtors respectfully submit that Bankruptcy Rule 6003(a) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the DAMIS Debtors and their estates.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

28.    Pursuant to Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in obtaining goods and services would be detrimental to the DAMIS Debtors, their creditors, and their estates, as the DAMIS Debtors' ability to manage and run their business operations without any unexpected or inopportune interruption requires, in part, that they continue to receive necessary goods and services.

DMS_US.378027271.5

29.     For this reason and those set forth above, the DAMIS Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent applicable to the Proposed Orders.

## RESERVATION OF RIGHTS

30.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the DAMIS Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the DAMIS Debtors and their estates with respect to the validity, priority, or amount of any claim against the DAMIS Debtors and their estates, (iii) shall impair, prejudice, waive, or otherwise affect the rights of the DAMIS Debtors and their estates with respect to any and all claims or causes of action against any of the Vendors, or (iv) shall be construed as a promise to pay a claim.

## NOTICE

31.     The DAMIS Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Office of the United States Attorney for the District of New Jersey; (iii) the Internal Revenue Service; (iv) the DAMIS Debtors' thirty (30) largest unsecured creditors (excluding insiders); (v) the Securities and Exchange Commission; (vi) the Banks; (vii) the Critical Vendors; and (viii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  The DAMIS Debtors will serve notice of this Motion and any order entered hereon in accordance with Rule 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey ("the "Local Rules").  In light of the nature of the relief requested herein, the DAMIS Debtors submit that no other or further notice is necessary.

DMS_US.378027271.5

## CONCLUSION

WHEREFORE, the DAMIS Debtors respectfully request entry of the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated: Florham Park, New Jersey
      June 24, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Michael P. Pompeo*
Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Ian J. Bambrick (*pro hac vice*)
Patrick A. Jackson (*pro hac vice*)
Sarah E. Silveira (*pro hac vice* pending)
222 Delaware Ave. Suite 1410
Wilmington, DE  19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
ian.bambrick@faegredrinker.com
patrick.jackson@faegredrinker.com
sarah.silveira@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and Debtors in Possession*

DMS_US.378027271.5