**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**FAEGRE DRINKER BIDDLE & REATH LLP**
Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Ian J. Bambrick (*pro hac vice*)
Patrick A. Jackson (*pro hac vice*)
Sarah E. Silveira (*pro hac vice*)
222 Delaware Ave. Suite 1410
Wilmington, DE  19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
ian.bambrick@faegredrinker.com
patrick.jackson@faegredrinker.com
sarah.silveira@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re:<br><br>DAMIS Holdings LLC, *et al.*,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 26-16439 (CMG)<br><br>(Jointly Administered) |

**DAMIS DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING THE DAMIS DEBTORS TO (A) MAINTAIN**
**THEIR INSURANCE COVERAGE ENTERED INTO PREPETITION AND**
**PAY ALL RELATED OBLIGATIONS AND (B) RENEW, MODIFY, EXTEND, OR**
**PURCHASE INSURANCE COVERAGE; (II) AUTHORIZING BANKS**

---

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/. The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS
RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTINE M. GRAVELLE
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

DAMIS Holdings LLC and certain of its affiliates (collectively, the "DAMIS Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the DAMIS Debtors to (a) maintain coverage under the Insurance Policies (as defined below) and pay all premiums and other obligations related thereto, and (b) renew, modify, extend, or purchase insurance in the ordinary course of business; (ii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process checks and electronic transfer requests related to the foregoing; and (iii) granting related relief.  In support of the Motion, the DAMIS Debtors rely upon and incorporate by reference the *Declaration of Perry Mandarino, Chief Restructuring Officer of the DAMIS Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]  In further support of this Motion, the DAMIS Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) (the "Standing Order").  This is a core proceeding pursuant to 28 U.S.C.

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day Declaration.

§ 157(b)(2), and the Court may enter a final order consistent with Article III of the United States

Constitution.[3]  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105(a),

363(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy

Code") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

3.      On June 4, 2026 (the "Petition Date"), each of the DAMIS Debtors filed with the

Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The DAMIS

Debtors are authorized to operate their businesses and manage their properties as debtors and

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request

has been made for the appointment of a trustee or an examiner.  The Chapter 11 Cases are being

jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). D.I. 35.

4.      As set forth in the First Day Declaration, the DAMIS Debtors own, lease, and

operate various multifamily properties, offices, hotels, and retail spaces throughout the United

States.  Additional information regarding the DAMIS Debtors' businesses, capital structure, and

the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day

Declaration.

## BACKGROUND RELATING TO THE MOTION

**A.      Insurance Policies and Insurance Obligations**

5.      In connection with the operation of the DAMIS Debtors' businesses, the DAMIS

Debtors maintain various insurance policies and programs (as renewed, amended, modified,

---

[3]    The DAMIS Debtors consent to the Court's entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter a final order consistent with Article III of the United States Constitution.

endorsed, and/or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Policies") through several different insurance carriers (each, an "Insurance Carrier") as set forth on **Exhibit B** hereto (the "Insurance Schedule").[4]  To maintain the Insurance Policies in the ordinary course of business, the DAMIS Debtors pay insurance premiums and other obligations related thereto, including taxes, assessments, financing charges, or other fees (collectively, the "Insurance Obligations").

6.        The Insurance Policies include various liability, property, and other insurance policies, which provide the DAMIS Debtors with insurance coverages related to, *inter alia*, automobile, directors and officers liability, flood, terrorism, cybercrime, umbrella liability, excess liability, and general liability.[5]  The DAMIS Debtors maintain the Insurance Policies to help manage and limit the risks associated with owning and managing real estate properties.  The Insurance Policies are essential to satisfy lender requirements, preserve the value of the DAMIS Debtors' real estate assets, mitigate potential losses, and support the DAMIS Debtors' ongoing operations and reorganization efforts.

7.        The DAMIS Debtors pay premiums (the "Insurance Premiums") either in advance or in arrears as directed by the Insurance Policies.  The DAMIS Debtors' total annual Insurance

---

[4]     The DAMIS Debtors also maintain insurance policies related to workers compensation; however, relief related to those policies was addressed in the *DAMIS Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the DAMIS Debtors to (A) Pay Prepetition Employee Obligations and (B) Maintain and Continue Employee Benefit Programs and Pay Administrative Obligations Related Thereto; (II) Modifying the Automatic Stay with Respect to the Workers' Compensation Program; (III) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto; and (IV) Granting Related Relief* [D.I. 155] filed on June 24, 2026 and granted on an interim basis on June 26, 2026 [D.I. 210].

[5]     It is possible that the DAMIS Debtors have inadvertently omitted certain Insurance Policies from the Insurance Schedule.  Accordingly, the Insurance Schedule represents a non-exhaustive list of the DAMIS Debtors' Insurance Policies.  To the extent the DAMIS Debtors subsequently become aware of additional Insurance Policies or Programs that have not previously been disclosed, the DAMIS Debtors will disclose these additional Insurance Policies to the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee").  In addition, the descriptions of the Insurance Policies provided herein are intended only as a summary, and the actual terms of the foregoing shall govern in the event of any inconsistency with the descriptions set forth herein.

4

Premiums are approximately $6.5 million in the ordinary course, the majority of which is paid in full at the time of renewal.  The DAMIS Debtors believe that approximately $105,000.00 is owed on account of accrued but unpaid Insurance Premiums as of the Petition Date.  The DAMIS Debtors seek authority, but not direction, to pay the Insurance Obligations that are or may become due and owing during the Chapter 11 Cases, including renewal of existing Insurance Policies.

**B.    Brokers**

8.    The DAMIS Debtors procure their Insurance Policies through certain brokers, including Brown & Brown, Inc., Cross Financial Corp., Wealcatch Insurance, Inc., and Worldwide Insurance Brokerage Ltd. (collectively, the "Brokers").  The Brokers assist the DAMIS Debtors in obtaining coverage at competitive rates by evaluating available offerings.  As compensation for their services, the Brokers collect commissions when the DAMIS Debtors purchase coverage or when premium payments are remitted in connection with the Insurance Policies.  This commission is typically paid to the Brokers by the Insurance Carriers and/or included in the Insurance Premiums paid by the DAMIS Debtors.  Nonetheless, out of an abondance of caution, to continue their Insurance Policies the DAMIS Debtors seek authority to pay the Brokers' commissions and fees as the same may become due in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies.

### RELIEF REQUESTED

9.    By this Motion, the DAMIS Debtors request that the Court enter the Proposed Orders, (i) authorizing the DAMIS Debtors to (a) maintain coverage under the Insurance Policies and pay all premiums and other obligations related thereto and (b) renew, modify, extend, or purchase insurance coverage in the ordinary course of business; (ii) authorizing the Banks to honor and process checks and electronic transfer requests related to the foregoing; and (iii) granting related relief.

**BASIS FOR RELIEF**

A.   **Cause Exists to Authorize the DAMIS Debtors, in their Discretion, to Make Necessary Payments Related to the Insurance Policies to Maintain Existing Coverage and Preserve the Value of the DAMIS Debtors' Estates**

10.   Maintaining the Insurance Policies is a crucial ordinary-course-of-business transaction.  Authority to pay any prepetition amounts that may be due and owing related to the Insurance Policies—to the extent that the DAMIS Debtors determine that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment of the coverage, benefits, or proceeds provided under the Insurance Policies—is necessary as the Insurance Policies are essential for preserving the value of the DAMIS Debtors' assets and, in most cases, are required to satisfy lender requirements and required by state, federal, and foreign laws that govern the DAMIS Debtors.  *See, e.g.*, 28 U.S.C. § 959(b) (chapter 11 debtor obligated under federal law to operate chapter 11 business according to the laws of the states where business and properties are located).  Further, under the chapter 11 operating guidelines issued by the U.S. Trustee pursuant to 28 U.S.C. § 586(a)(3), the DAMIS Debtors are obligated to maintain during the Chapter 11 Cases certain types of insurance coverage, which the Insurance Policies provide.

11.   In addition, the DAMIS Debtors may need to renew, modify, extend, or replace certain of their Insurance Policies during the pendency of the Chapter 11 Cases.  The nonpayment of any premiums, deductibles, or related fees under any of the Insurance Policies could result in one or more of the Insurance Carriers increasing future insurance premiums, declining to renew the insurance policies, or refusing to enter into new insurance agreements with the DAMIS Debtors.  If the Insurance Policies were to lapse without renewal, the DAMIS Debtors may be exposed to substantial liability for first-party property claims and third-party liability claims, to the detriment of all parties in interest.

12.     The Court has authority pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code to grant the relief requested in this Motion.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that the debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).  Section 363(b) grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code).

13.     In addition, section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of prepetition claims under the doctrine of necessity or the "necessity of payment" doctrine when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of the debtor's estate.  *In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[T]he *sine qua non* for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment.").

14.     Payments made under the "necessity of payment" doctrine are in the interest of all parties because such payment will facilitate a debtor's continued operations.  In *In re Penn Cent. Transp. Co.*, the Third Circuit collected cases permitting payments made under the doctrine of necessity and included the following reasoning:

> A number of cases declare a so-called "necessity of payment" exception to the normal deferment of the payment of prereorganization claims until their disposition can be made part of a plan of reorganization. These cases permit immediate payment of claims of creditors where those creditors will not supply services or

> material essential to the conduct of the business until their pre-reorganization
> claims shall have been paid.

467 F.2d 100, 102 n.1 (3d Cir. 1972).  Other courts have similarly held that, through the doctrine of necessity and pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").  The payment of prepetition claims under the doctrine of necessity is consistent with the two recognized policies of chapter 11 of the Bankruptcy Code: "preserving going concerns and maximizing property available to satisfy creditors."  *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 435 (1999).

15.     Finally, section 503(b)(1) of the Bankruptcy Code provides, "After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate[.]"  11 U.S.C. § 503(b)(1)(A).  The Court, therefore, can authorize the DAMIS Debtors to use estate funds to pay any postpetition amounts that may come due related to the Insurance Policies.

16.     Granting the DAMIS Debtors authority to honor all obligations related to the Insurance Policies in the DAMIS Debtors' discretion is essential to the continuation of the DAMIS Debtors' business and preservation of value of their estates for all parties in interest.  As such, the relief requested by this Motion (i) represents a sound exercise of the DAMIS Debtors' business judgment, (ii) is necessary to avoid immediate and irreparable harm to the DAMIS Debtors' estates, and (iii) is justified under sections 105(a), 363(b), and 503(b) of the Bankruptcy Code.

Accordingly, the DAMIS Debtors respectfully request that the Court grant the relief requested in this Motion.

**B.      Cause Exists to Authorize Applicable Banks and Financial Institutions to Honor Checks and Electronic Fund Transfers**

17.      The DAMIS Debtors have sufficient funds to pay any prepetition amounts that the DAMIS Debtors become aware of in the ordinary course by virtue of access to unencumbered cash and anticipated access to cash collateral.  In addition, under the DAMIS Debtors' existing cash management system, the DAMIS Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies.  Accordingly, there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made.  Therefore, the DAMIS Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the DAMIS Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.  The DAMIS Debtors also request authority to issue new postpetition checks or effect new automatic clearing house or wire transfers to replace any prepetition checks or funds transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases with respect to prepetition amounts owed on account of the Insurance Policies.

<u>**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**</u>

18.      Pursuant to Bankruptcy Rule 6004(h), "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any disruption in, among other things, the Insurance Policies would be detrimental to the DAMIS Debtors, their creditors, and their estates and would impair the DAMIS Debtors' ability to optimize their business performance at this critical time as they begin the chapter 11 process.

9

19.     For this reason and those set forth above, the DAMIS Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent applicable to the Proposed Orders.

## NOTICE

20.     The DAMIS Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) the DAMIS Debtors' fifty (50) largest unsecured creditors (excluding insiders); (iii) any official committees appointed in the Chapter 11 Cases; (iv) the DAMIS Debtors prepetition secured parties; (v) the Insurance Carriers; and (vi) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the DAMIS Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the DAMIS Debtors respectfully request entry of the Proposed Orders,

granting the relief requested herein and such other and further relief as is just and proper.

Dated: Florham Park, New Jersey
      July 2, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Michael P. Pompeo*
Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

-and-

Ian J. Bambrick (*pro hac vice*)
Patrick A. Jackson (*pro hac vice*)
Sarah E. Silveira (*pro hac vice*)
222 Delaware Ave. Suite 1410
Wilmington, DE  19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
ian.bambrick@faegredrinker.com
patrick.jackson@faegredrinker.com
sarah.silveira@faegredrinker.com

*Proposed Counsel to the DAMIS Debtors and
Debtors in Possession*

11