**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**ASHURST PERKINS COIE US LLP**
Gary F. Eisenberg, Bar No. 033261989
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6900
Gary.Eisenberg@ashurstperkins.com

*Attorneys for Computershare Trust Company, N.A., as Trustee for the benefit of the registered holders of BANK5 2023-5YR1, Commercial Mortgage Pass-Through Certificates, Series 2023-5YR1, Computershare Trust Company, National Association, as Trustee for the benefit of the registered holders of BBCMS Mortgage Trust 2025-C35, Commercial Mortgage Pass-Through Certificates, Series 2025-C35,* and *Wilmington Savings Fund Society, FSB, as Trustee, on behalf of the registered Holders of Benchmark 2026-B43 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2026-B43*

| | |
|---|---|
| In Re:<br><br>        DAMIS Holdings, LLC, *et al.,*[1]<br><br>                Debtors. | Case No. 26-16439 (CMG)<br><br>Chapter 11 |

**SUPPLEMENTAL LIMITED OBJECTION OF CERTAIN CREDITORS TO DAMIS DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PUTATIVE SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF (DOCKET NO. 152)**

---

[1] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS/. The location of DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611

187854226

Computershare Trust Company, N.A., as Trustee for the benefit of the registered holders of BANK5 2023-5YR1, Commercial Mortgage Pass-Through Certificates, Series 2023-5YR1, Computershare Trust Company, National Association, as Trustee for the benefit of the registered holders of BBCMS Mortgage Trust 2025-C35, Commercial Mortgage Pass-Through Certificates, Series 2025-C35, and Wilmington Savings Fund Society, FSB, as Trustee, on behalf of the registered Holders of Benchmark 2026-B43 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2026-B43 (collectively, "Fee Creditors") hereby file this supplemental limited objection to the DAMIS Debtors' *Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Use Cash Collateral; (II) Granting Adequate Protection To Putative Secured Parties; (III) Modifying The Automatic Stay; (Iv) Scheduling A Final Hearing; And (V) Granting Related Relief* (the "Motion") and in support state as follows:

## PRELIMINARY STATEMENT

1.      On June 25, 2026, Fee Creditors filed their *Limited Conditional Objection of Certain Creditors to DAMIS Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Putative Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (Docket No. 188) (the "Initial Objection"). Fee Creditors incorporate the Initial Objection by reference herein.

2.      This Supplemental Objection raises additional grounds for objection not addressed in the Initial Objection. Fee Creditors supplement their Initial Objection to reiterate that no entry of an order authorizing use of cash collateral by any Ground Tenant Debtor (defined below) should be able to prejudice rights of Fee Creditors arising from any failure of any obligation of the Ground Tenant Debtors to keep post-petition lease obligations current under the Bankruptcy Code, even if

-2-

use of cash collateral in an approved budget does not include funds for payment of the corresponding ground lease, real estate taxes and insurance (as more particularly described below, the "Required Lease Payments").  In addition, Fee Creditors respectfully submit that failure of Ground Tenant Debtors to make Required Lease Payments may result in a failure of the proposed cash collateral order to provide adequate protection to the Ground Lease Mortgagees, who may be forced to make protective advances under the SNDAs if Required Lease Payments are not timely paid.

## BACKGROUND

3.      As set forth in the Initial Objection and the *Declaration of Margaret Honigberg* filed contemporaneously herewith (the "Honigberg Declaration"), Fee Creditors (defined in the Initial Objection as "Leasehold Tenant Creditors") hold Mortgages from a series of Borrowers (as defined in the Initial Objection) on the fee interests in properties leased by the Borrowers to affiliated Ground Tenant Debtors via 99-year Ground Leases.  The Ground Lease payments are the primary source of cash flow to each Borrower, enabling each Borrower to make debt service payments as required under the Notes to the corresponding Leasehold Tenant Creditor.  The capitalized terms used but not defined herein shall have the meanings ascribed to them in the Initial Objection.

4.      The Honigberg Declaration further sets out (a) the structure and key terms of the SNDAs, including the cure rights and protective advance provisions described below; and (b) a chart showing for each Ground Lease property: (i) the monthly rent payment due under each Ground Lease; (ii) the monthly payment owing under the Notes from each Borrower to Fee Creditor; (iii) the monthly real property tax accruing on each Ground Lease property; and (iv) the

monthly insurance premium accruing on each Ground Lease property. *See* Honigberg Declaration, Exhibit D (the "Required Lease Payment Chart").

5.      This Required Lease Payment Chart demonstrates the magnitude of the potential protective advances each Ground Lease Mortgagee would need to make, and thus the extent of the erosion of adequate protection, if the cash collateral order does not require timely payment of the Required Lease Payments. In essence, any amount of rent, taxes, or insurance that goes unpaid by a Ground Tenant Debtor is an amount that a Ground Lease Mortgagee may need to advance to maintain the Ground Lease. That could increase such Ground Lease Mortgagee's secured claim amount. This could correspondingly reduce its already-diminished collateral cushion (or worsen its deficiency).

6.      Each Ground Tenant Debtor has mortgaged its leasehold interest under its Ground Lease to a lender identified in the chart (each, a "Ground Lease Mortgagee"). Each Borrower, Ground Tenant Debtor, and Ground Lease Mortgagee is a party, together with Leasehold Tenant Creditor as successor in interest to the original payee of the Notes, to a Ground Lease Recognition, Subordination, Non-Disturbance, Estoppel and Attornment Agreement (each, an "SNDA").

7.      The Ground Lease Mortgagees identified in the chart include First Financial Bank, Windsor Federal Savings and Loan Association, Easthampton Savings Bank, Bank Iowa, First Technology Federal Credit Union, Farmers & Merchants State Bank, and Northern Bank & Trust Company.

**ARGUMENT**

**A.      Post-Petition Lease Obligations Must Be Kept Current.**

8.      A chapter 11 debtor is obligated to timely perform its post-petition obligations under unexpired leases, including the payment of rent as it comes due. This obligation exists independent of any cash collateral order. *See* 11 U.S.C. § 365(d)(3) ("The trustee shall timely

perform all the obligations of the debtor, … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."); *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms.").  The Third Circuit's reading of § 365(d)(3) effectively gives landlords something stronger than an ordinary § 503(b)(1) administrative expense analysis because the statute states the debtor must perform "notwithstanding section 503(b)(1)."

9.    The Ground Tenant Debtors cannot use a cash collateral order to excuse or defer their post-petition Ground Lease payment obligations to the Borrowers.  Each Ground Lease is an unexpired lease within the meaning of 11 U.S.C. § 365, and each Ground Tenant Debtor is obligated to timely perform all obligations thereunder arising after the petition date, including the full and timely payment of rent.

10.    Any cash collateral order that does not require full and timely payment of the Required Lease Payments is inconsistent with, and cannot absolve, the Ground Tenant Debtors' obligations under the Bankruptcy Code.  Thus, this Court should condition the use of cash collateral on payment of the Required Lease Payments.

**B.    Ground Lease Mortgagees' Cure Rights Under the SNDAs and Resulting Lack of Adequate Protection**

11.    Under each SNDA, if a Ground Tenant Debtor defaults on its Ground Lease, including by failing to pay rent, real property taxes, or insurance, the corresponding Ground Lease Mortgagee has the right (but not the obligation) to cure such default by making protective advances to maintain the Ground Lease in existence.

12.    Specifically, certain SNDAs expressly provide, at Section 9 ("Notice to Leasehold Mortgagee and Right to Cure"), that the landlord (*i.e.*, the Borrower) shall notify the Ground Lease

Mortgagee of any default by the Ground Tenant under the Ground Lease and that no notice of cancellation of the Ground Lease shall be effective unless the Ground Lease Mortgagee "shall have received notice of default giving rise to such cancellation" and, in the case of monetary defaults, until thirty (30) days have elapsed following such notice, or in the case of non-monetary defaults, until sixty (60) days have elapsed.  Critically, these SNDAs further provides that the Ground Lease Mortgagee "shall continue to cure all monetary defaults of Tenant."  The remaining SNDAs incorporate equivalent cure rights and notice protections for the Ground Lease Mortgagee through reference to the applicable provisions of the Ground Lease.

13. The SNDAs further provide that if the Ground Lease is terminated as a result of a default, or is rejected in any bankruptcy proceeding, the Ground Lease Mortgagee shall have the option to obtain a new lease "upon payment . . . of all amounts then remaining unpaid and the curing of any such default."  In certain SNDAs, this right is set forth at Section 7 ("Right to New Lease"); in others, it is incorporated by reference to the equivalent Ground Lease provisions applicable to Qualifying Mortgagees.  This provision underscores the financial exposure of each Ground Lease Mortgagee in the event of non-payment of Ground Lease obligations.

14. The practical consequence of these SNDA provisions is as follows: if Required Lease Payments are not paid by the Ground Tenant Debtors, each Ground Lease Mortgagee may be compelled to make protective advances, thereby paying those Required Lease Payments amounts itself, in order to prevent termination of the Ground Lease and thereby protect its leasehold mortgage collateral from termination and thus evisceration.

15. Any such protective advance increases the indebtedness secured by the Ground Lease Mortgagee's leasehold mortgage. Thus:

(a)     Any Ground Lease Mortgagee that is currently undersecured will become *more* undersecured if forced to make protective advances on account of Ground Tenant Debtors' failure to pay Required Lease Payments; and

(b)     Any Ground Lease Mortgagee that is currently barely secured (*i.e.*, has a minimal equity cushion) is at risk of becoming undersecured if non-payment continues and protective advances become necessary.

16.     Therefore, any cash collateral order that excuses or defers payment of Ground Lease rent, real property taxes, and insurance poses a likelihood of failure to provide adequate protection to the Ground Lease Mortgagees under 11 U.S.C. § 363(e).

17.     The purpose of this Supplemental Objection is to put in perspective how much more undersecured each Ground Lease Mortgagee could be rendered by cash collateral orders excusing payment of these items if the Ground Lease Mortgagee has to make a protective advance to stave off termination rights under the SNDAs.  It also reinforces Fee Creditors' position that no cash collateral order should be able to effectuate, by affiliate atrophy by Borrowers, excusing the Ground Tenant Debtors from their Required Lease Payment obligations.

## RESERVATION OF RIGHTS

18.     Fee Creditors reserve all rights regarding the Motion, including but not limited to: (a) the right to object further to the Motion on any grounds; (b) all rights and remedies of Fee Creditors under the Mortgages, the Notes, the assignments of leases and rents, and all other loan documents; (c) all rights and remedies of Fee Creditors under the SNDAs, including without limitation the right to enforce any and all provisions thereof; (d) all rights to seek adequate protection, relief from the automatic stay, or other relief under the Bankruptcy Code; (e) the right to assert claims against Ground Tenant Debtors' estates for any damage caused by non-payment

of Ground Lease obligations; and (f) all rights with respect to enforcement of the Ground Leases and pursuit of remedies thereunder in the event of non-payment by Ground Tenant Debtors.

**WHEREFORE,** Fee Creditors respectfully request the Court (a) deny the Motion, or condition any relief upon requiring full and timely payment of Ground Lease obligations, including rent, real property taxes, and insurance; (b) alternatively, if the Court is inclined to grant any relief, that the Court provide adequate protection to the Ground Lease Mortgagees against the increased indebtedness resulting from protective advances that may be necessitated by non-payment of Ground Lease obligations; and (c) grant such other and further relief as is just and proper.

Dated: July 7, 2026

**ASHURST PERKINS COIE US LLP**

By:  _s/ Gary F. Eisenberg_
Gary F. Eisenberg, Bar No. 033261989
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
Gary.Eisenberg@ashurstperkins.com